**Philip C. GATLEY, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant and Third-Party Plaintiff,**

v.

**Wallace E. NUTTER, Third-Party Defendant.**

**Civ. No. 86-0223 P.**

United States District Court, D. Maine.

June 12, 1987.

Dwight A. Fifield, William H. Childs, Portland, Me., for plaintiff.

Harrison L. Richardson, Barri L. Bloom, Richardson, Tyler & Troubh, Portland, Me., for defendant and third-party plaintiff.

Evan M. Hansen, Preti, Flaherty & Beliveau, Portland, Me., for third-party defendant.

## MEMORANDUM OF DECISION AND ORDER ON THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

This case is before the Court on Third-Party Defendant Nutter's motion for summary judgment. For the reasons stated herein, the motion will be granted in part and denied in part.

The facts are as follows. Defendant and Third-Party Plaintiff United Parcel Service, Inc. (UPS) contracted with Nutter to clean UPS's facility in South Portland, Maine. Nutter, in turn, employed Plaintiff Gatley to assist him in cleaning operations. While working on UPS premises on October 24, 1984 and August 30, 1985, Gatley was injured; in connection therewith, he recovered workers' compensation benefits from Nutter's insurance carrier. Then, according to Nutter's affidavit, UPS informed Nutter on September 2, 1986 that it was barring Gatley from its premises because of an "attitude problem." Nutter then laid Gatley off.

Gatley brought this action in state court, alleging that UPS's negligence had caused his 1984 and 1985 injuries. UPS removed the case to this Court pursuant to 28 U.S.C. § 1441 based on diversity of citizenship. Gatley then amended his complaint by adding a count alleging that UPS had tortiously interfered with his employment relationship with Nutter. UPS then filed a third-party complaint seeking contractual indemnification from Nutter for any judgment that Gatley might obtain against UPS. Nutter now moves for summary judgment on UPS's indemnification claim.

The indemnification clause in the contract between UPS and Nutter (as "Contractor") reads, in pertinent part, as follows:

> The Contractor hereby assumes entire responsibility and liability for any and all damages or injury of any kind or nature whatsoever, caused by, resulting from, arising out of, incidental to, or accruing in connection with the execution of the

work provided for in this Agreement. Such damage and injury shall include ... injury to all persons, *including employees of the Contractor....*

The Contractor agrees to indemnify and save harmless UPS, its agents, servants, and employees from and against any and all claims, liabilities, loss and expense by reason of any liability imposed by law upon UPS for any above described damage or injury, however such may be caused, including but not limited to such damage or injury as is caused by the sole or concurrent negligence of UPS, its agents, servants and employees.... *This indemnity obligation shall not be limited in any way by benefits payable under Workmen's Compensation acts....* (Emphasis added.)

Nutter first argues that this clause is not a valid waiver of his employer immunity under the Maine Workers' Compensation Act, Me.Rev.Stat.Ann., tit. 39, §§ 1–195 (1964 & Supp.1986). This employer immunity extends to suits wherein an employee sues a third party for a covered injury and the third party seeks contribution from the employer. *Diamond Intern. Corp. v. Sullivan & Merritt,* 493 A.2d 1043, 1045–46 (Me.1985). Although an employer may waive this immunity to third-party suits by agreeing to indemnify the third party, " 'an indemnity clause of this type is enforceable only if it clearly and specifically contains a waiver of the immunity of the workers' compensation act, either by so stating or specifically stating that the indemnitor assumes potential liability for actions brought by its own employees.' " *Id.* at 1048 (quoting *Brown v. Prime Constr. Co.,* 102 Wash.2d 235, 684 P.2d 73, 75 (1984)). Nutter argues that the clause at issue here does not, as a matter of law, meet the "clear and specific" standard.

■ The Court concludes otherwise. Under the clause, Nutter clearly and specifically assumes liability for injuries to his own employees, and the clause expressly provides that this obligation is not limited in any way by benefits payable through workers' compensation. Thus the clause is "clear and specific" under either of the *Diamond Intern.* tests: it expressly states that workers' compensation does not limit Nutter's indemnity obligation, and it expressly assumes liability for injuries to Nutter's own employees. Moreover, Nutter expressly obligates himself to indemnify UPS for injuries caused by UPS's sole or concurrent negligence. *Cf. Emery-Waterhouse Co. v. Lea,* 467 A.2d 986, 993 (Me. 1983) (stating that only where contract clearly and unequivocally reflects a mutual intention that a party be indemnified for its own negligence will the contract be so interpreted); *Burns & Roe, Inc. v. Central Maine Power Co.,* 659 F.Supp. 141, 143–144 (D.Me.1987) (same).

Nutter does not argue that this interpretation is incorrect or that the clause is ambiguous in any legal sense. Rather, he argues that such an interpretation is not clear and specific *to a reasonable person in his position,* who did not have the advice of counsel in signing the contract and who assertedly did not intend to waive or understand himself to be waiving his employer immunity. He relies on the rule that "[i]f an express agreement exempting the defendant from liability for his negligence is to be sustained, it must appear that its terms were brought home to the plaintiff; and if he did not know of the provision in his contract and a reasonable person would not have known of it, it is not binding upon him and the agreement fails for want of mutual assent." W. Prosser, *Law of Torts* § 68 at 444 (4th ed. 1971).

But this rule appears to apply only to exculpatory clauses in contracts between a tortfeasor and an injured party; the obvious purpose of the rule is to guard against injured plaintiffs unknowingly waiving, in advance, their right to compensation from tortfeasors. Quite different considerations apply to indemnification clauses such as the one here at issue; in interpreting this indemnification clause, the question is not whether compensation will be paid but rather which Defendant shall pay. In this situation, the public policy arguments for construing the clause against the party relying upon it, or for finding the clause

unenforceable, are substantially weaker. And Nutter cites no case suggesting that the "reasonable person would not have known" rule quoted above has ever been applied in an indemnification context and no Maine case so holding can be found.

 Nutter's second main argument is that the indemnification clause is an exculpatory clause and is thus unenforceable as against public policy. The fatal flaw in this argument is that the clause simply is not exculpatory in nature; rather, it provides for indemnification. An exculpatory clause would relieve UPS entirely of any liability to the other party to the clause; the indemnification clause merely entitles UPS to indemnity from Nutter for any judgment entered against UPS that is within the scope of the clause. That is precisely the relief that UPS seeks in its third-party claim against Nutter. The clause not being exculpatory, the Court need not consider the extent to which such clauses may be unenforceable *per se* or under the circumstances of this case.

Nutter's third main argument is that the indemnification clause is unenforceable because it is part of a contract of adhesion, the product of a take-it-or-leave-it offer by a party with vastly superior bargaining power. The Court notes that this defense was not specifically raised in Nutter's answer to the third-party complaint. In any case, it raises issues of fact that cannot be resolved on this motion for summary judgment.

 Nutter's fourth main argument is that the indemnification clause is unenforceable to the extent that UPS seeks indemnity for liability for an intentional tort: that is, Gatley's claim of intentional interference with an employment relationship. The Court agrees that the clause does not entitle UPS to indemnity for its intentional torts or those of its agents, servants, and employees. The rule in *Emery-Waterhouse*, that a contract will not be interpreted to provide for indemnity for a

party's own negligence unless the contract clearly and unequivocally so provides, would appear to apply *a fortiori* to contracts assertedly providing for indemnity for a party's own intentional torts. And the clause at issue here merely provides for indemnification for injury "including but not limited to such damage or injury as is caused by the sole or concurrent negligence of UPS, its agents, servants and employees...." There is no clear and unequivocal agreement regarding indemnity for intentional torts, and thus the clause will not be interpreted to provide for such indemnity.[1]

Accordingly, it is hereby ORDERED that Nutter's motion for summary judgment in his favor is GRANTED insofar as UPS seeks indemnification for any judgment entered against it for tortious interference with Gatley's employment relationship with Nutter, and is in all other respects DENIED.

---

1. The Court thus need not decide whether the rule against clauses exempting a party from liability for the party's own intentional torts, *see Restatement (Second) of Contracts* § 195(1) (1979); W. Prosser, *Law of Torts* § 68 at 444–45 (4th ed. 1971), applies to indemnification clauses or only to exculpatory clauses.